**Frank P. SENFTLE**, Plaintiff

v.

**Lee E. LANDAU**, et. al, Defendant

**No. CIV PJM 04–2644.**

United States District Court,
D. Maryland.

Aug. 11, 2005.

Frank P. Senftle, Pro Se, for Plaintiffs.

David J Kaminow, Rockville, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

Frank P. Senftle has filed a *pro se* Complaint against Lee E. Landau and Landau and Landau, P.A., claiming violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (1977) ("FDCPA"). Defendants have filed a Motion for Summary Judgment, which Senftle opposes. Having considered the pleadings, the Court GRANTS Defendants' Motion.

### II.

On April 28, 1997, Senftle filed an application for membership in the Hughes Aircraft Employees Federal Credit Union ("HAEFCU"), which supplied him with a MasterCard Gold credit card. By the April 14, 2001 closing date, Senftle owed $26,948.45 on his account which was past due. Senftle's account was thus forwarded to MCT Group ("MCT"), a California partnership in the business of debt collection.

A partner of the MCT Group, Francis M. Censullo, has stated under oath that MCT sent Senftle a form letter on or

about June 2001[1] containing the written notice required by § 1692g(a) of the FDCPA.[2] He further avers under oath that Senftle's account information was incorporated into the form letter when mailed. In his pleadings, Senftle alleges that he never received the June 2001 let-ter, but has failed to deny its receipt under oath-even after the Court cautioned him that on summary judgment he was obliged to produce an affidavit denying receipt.[3]

On or about October 1, 2001, MCT mailed Senftle a second letter, which he admits he received.[4] This time Senftle

1. The body of the letter purportedly sent to Senftle read:

    This has been sent to you by a collection agency.

    \*    \*    \*    \*    \*    \*

    This is a formal demand for payment in full.

    \*    \*    \*    \*    \*    \*

    Unless you notify this office within 30 days after receiving this notice that you will dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment and mail in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

    This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

    The Court finds that the letter, if sent, complied with the statutory requirements.

2. 15 U.S.C. § 1692g(a) provides,

    (a) Notice of debt; contents

    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

    15 U.S.C.A. § 1692g

3. The Court's Memorandum to Senftle, dated May 19, 2005, read:

    Defendants allege that MCT mailed an initial letter in compliance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq ("FDCPA") on or about June 2001. Their Motion attaches an affidavit stating that this is so, along with a sample form letter.

    In your Opposition, you state that you received the second letter, but not the initial June 2001 letter. Federal Rule of Civil Procedure 56(e) provides, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by his own affidavit, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court thus grants you ten (10) days to supplement your Opposition with an affidavit addressing this disputed issue.

4. The October 1, 2001 letter read, in part:

    Please take notice.

was instructed to respond within five (5) days or MCT would "assume from [his] silence that [he does] not intend to pay his debt voluntarily." On October 5, 2001, Senftle responded in writing, requesting that MCT validate his debt. MCT, however, did not do so.

Instead it forwarded the case to Landau & Landau, P.A., the entity through which Lee E. Landau conducts his law practice.

Soon after, Landau filed suit against Senftle in the Circuit Court for Montgomery County, Maryland on behalf of HA-EFCU, seeking $26,948.45, plus interest, attorney's fees, and costs. Senftle responded *pro se*, with a Motion for More Definite Statement. The Circuit Court denied the Motion, and ordered Senftle to file his answer within 15 days. Rather than answering, Senftle filed yet another Motion for More Definite Statement. Landau in turn filed a Motion for Judgment by Default, which Senftle challenged by filing a Motion to Strike Plaintiff's Affidavit and Motion to Dismiss and a Notice of Supplemental Filing. The Circuit Court, however, granted Landau's Motion for Judgment by Default, entering judgment against Senftle in the amount of $39,164.18, plus interest, and $4,042.27 in attorney's fees.

Senftle then filed a Motion to Set Aside Judgment in light of alleged violations of the FDCPA, which Landau opposed asserting that, "assuming arguendo that there was a violation of the FDCPA ... [Senftle] has failed to establish that his remedy for the alleged violation would be to have the judgment entered against him

... vacated." The Circuit Court denied Senftle's Motion to Set Aside Judgment. That Judgment is apparently final.

Senftle then filed the instant Complaint against Defendants asserting four violations of the FDCPA. First, he says, "Defendants filed a debt collection law suit against the Plaintiff and willfully and intentionally failed to give him the mandatory notice of consumer rights contained under ... 15 U.S.C. § 1692g(a), *i.e.*, the Defendants did not give the Plaintiff the required validation notice ... within five days of their initial debt collection communication...." Second, he "has been denied notice of his federally mandated consumer right to dispute the alleged debt under 15 U.S.C. § 1692g(b) and the opportunity to exercise [this] right." Third, "Defendants ... initial debt collection communication with Plaintiff, i.e., [the] debt collection law suit, and their subsequent communications with the Plaintiff also fail to disclose the fact that the Defendants are debt collectors attempting to collect a debt ... [, a] violation of 15 U.S.C. § 1692e(11)." Fourth, "Defendants refused to verify the alleged debt as requested by the Plaintiff and pushed on with their debt collection litigation against him, ... [a violation] of 15 U.S.C. § 1692g(b)."

Senftle seeks statutory damages and costs, as well as an order staying the execution of the Circuit Court judgment until the conclusion of this suit.

### III.

Before all else, the Court considers whether it has jurisdiction to hear this case.

---

After the above specified time, we will assume from your silence that you do not intend to pay this debt voluntarily.
You will therefore force us to proceed with our client's recommendation. They have authorized us to take further action on this account.

Unless we hear from you or have your payment for the remaining balance within five (5) days of receipt of this letter, it will be the intent of this office to proceed with our client's instructions.

■ Under the so-called *Rooker–Feldman* doctrine[5], lower federal courts generally do not have subject-matter jurisdiction to review state-court decisions by a state's highest court or its lower courts. *Shooting Point, L.L.C. v. W.M. Cumming,* 368 F.3d 379, 383–84 (4th Cir.2004) (quoting *Plyler v. Moore,* 129 F.3d 728, 731 (4th Cir.1997) and *citing D.C. Ct. of App. v. Feldman,* 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)); *Jordahl,* 122 F.3d at 199.[6] The doctrine bars a party losing in state court from seeking what in substance would be appellate review of a state judgment in lower federal court, *American Reliable Insurance Co. v. Stillwell,* 336 F.3d 311 (4th Cir.2003) (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)), based on the losing party's claim that the state judgment itself violates federal rights. *Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 199 (4th Cir.2000); *see Johnson,* 512 U.S. at 1005–06, 114 S.Ct. 2647. This is chiefly because 28 U.S.C. § 1257(a) reserves federal jurisdiction to review state court decisions to the Supreme Court. *Ernst,* 108 F.3d at 491.

Recently, the United States Supreme Court clarified the contours of *Rooker–Feldman*:

> The *Rooker–Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: *cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.* *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions. (emphasis added).

*Exxon Mobil Corp. v. Saudi Basic Ind. Corp.,* —— U.S. ——, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005); *see also Johnson v. De Grandy,* 512 U.S.

---

**5.** *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Though the parties did not brief the Rooker–Feldman issue, it is a jurisdictional matter that may be raised by the court sua sponte. *Friedman's, Inc. v. Dunlap,* 290 F.3d 191, 195–96 (4th Cir.2002); *see Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 197 n. 5 (4th Cir.1997). When *Rooker–Feldman* is implicated, the court must address the issue before proceeding with the case. *See Stanton v. District of Columbia Court of Appeals,* 127 F.3d 72, 75 (D.C.Cir.1997) ("Because it is jurisdictional, we must first consider the *Rooker–Feldman* doctrine ....." (emphasis added)); *Neal v. Wilson,* 112 F.3d 351, 356 (8th Cir. 1997).

**6.** Though the Circuit Court for Montgomery County entered default judgment against Senftle, *Rooker–Feldman* also bars a federal plaintiff from overturning or altering a state court default judgment. *See Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1035–37 (8th Cir.1999) (concluding that *Rooker–Feldman* deprives district court jurisdiction to grant injunctive relief to recalculate award of deficiency damages because it would amend state court default judgment); *Nelson v. Uran,* 1999 WL 170166, 175 F.3d 1015 (4th Cir. 1999) (holding that *Rooker–Feldman* bars federal adjudication where federal plaintiff seeks to contest a state court's ruling on personal jurisdiction and subsequent default judgment); *Smith v. Weinberger, P.C.,* 994 F.Supp. 418, 424 (E.D.N.Y.1998) (concluding that *Rooker–Feldman* applies where plaintiff alleges that state court default judgment was procured by fraud); *Resler v. Messerli & Kramer, P.A.,* 2003 WL 193498, * 3 (D.Minn.2003) (holding that *Rooker–Feldman* bars federal plaintiff's FDCPA fraud claim, where fraud on court finding would nullify state court default judgment).

997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).

■ The pivotal inquiry in the present case is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Long v. Shorebank Development Corporation,* 182 F.3d 548, 555 (7th Cir.1999).

■ *Rooker–Feldman* applies where the injury alleged resulted from the state court judgment itself, *Long,* 182 F.3d at 555, because in granting the federal plaintiff the relief sought, a federal court must determine that "the state court judgment was erroneously entered or must take action that would render the judgment ineffectual," thereby passing on the merits of that state court decision. *See Jordahl,* 122 F.3d at 202 (internal punctuation omitted) (quoting *Ernst v. Child and Youth Servs.,* 108 F.3d 486, 491 (3d Cir.1997)).

■ On the other hand, *Rooker–Feldman* is inapplicable where the alleged injury is distinct from the state court judgment, where a federal plaintiff raises an independent claim, not "inextricably intertwined" with that state judgment.[7] *Long,* 182 F.3d at 555; *Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 701–02 (7th Cir. 1998); *Exxon Mobil Corp.,* 125 S.Ct. at 1521–22. *Rooker–Feldman* does not strip lower federal courts of subject-matter ju-risdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. *See Exxon Mobil Corp.,* 125 S.Ct. at 1527. If a federal plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (quoting *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993)); *accord Noel v. Hall,* 341 F.3d 1148, 1163–64 (9th Cir. 2003). Hence where a federal plaintiff alleges an independent claim that the state court failed to remedy, a federal court may consider that claim. *Long,* 182 F.3d at 555; *cf. American Reliable Insurance Co.,* 336 F.3d at 317–18.

■ Here Senftle's alleges four violations of the FDCPA, all of which pertain to the manner in which Landau collected Senftle's debt, not the validity of the underlying debt. That, in the Court's view, suffices to permit the claims to go forward in this Court. *See Azar v. Hayter,* 874 F.Supp. 1314 (N.D.Fla.1995); *Long,* 182 F.3d at 554. A *"FDCPA claim has nothing to do with whether the underlying debt is valid,"* Green v. Ford Motor Credit Co., 152 Md.App. 32 58–60, 828 A.2d 821, 837–38 (2003) (emphasis in original), when it concerns the method of collection.[8] When

---

**7.** *Rooker–Feldman* extends to claims that are "inextricably intertwined" with a state-court judgment. *Exxon Mobil Corp.,* 125 S.Ct. at 1523, n. 1; *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206, N. 16, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see Shooting Point, L.L.C.,* 368 F.3d at 383 (quoting *Plyler,* 129 F.3d at 731).

**8.** *See also, Brooks v. Auto Sales & Services, Inc.,* 2001 WL 686950, * 4 (S.D.Ind.2001) (holding that *Rooker–Feldman* did not bar FDCPA claim alleging false, deceptive, or mis-leading representation or means in connection with the collection of a debt where Small Claims Court entered judgment on debt); *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri,* 2001 WL 1543516 * 10 (N.D.Ill. 2001) (holding that *Rooker–Feldman* did bar FDCPA claim where violations arose from the Defendant's pre-judgment collection activities and not from the judgments themselves); *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.,* 348 F.Supp.2d 903 (S.D.Oh.2004) (concluding that *Rooker–Feldman* was no bar to FDCPA claim against debt collector for filing

a FDCPA claim concerns collection activities, a FDCPA claim does not arise out of the transaction creating the debt. *Azar,* 874 F.Supp. 1317–18. Indeed, even if the Circuit Court correctly determined that the underlying debt was valid, Maryland rules of res judicata would not preclude Senftle from later seeking damages against creditors for illegally collecting that debt. *Cf. Green,* 152 Md.App. at 58–60, 828 A.2d at 837–38 (stating that a FDCPA claim concerning the method of collecting debt does not arise out of the transaction creating that debt). Senftle's injury relates to his creditor's alleged willful failure to give him notice of his rights, denial of his right to dispute the underlying debt, failure to disclose that it (or its agent) were debt collectors, and refusal to verify his debt, not the Circuit Court's judgment determining that the debt was valid. Accordingly, *Rooker–Feldman* does not bar Senftle's FDCPA claims.[9]

On the other hand, beyond seeking damages, Senftle asks this Court to stay the state court's default judgment pending the disposition of this case. In effect, he asks the Court to treat the state court outcome in this sense as dependent on the present proceedings. He cannot have it both ways. Even if this Court had authority to stay the state court case-a doubtful proposition-it would decline to do so. The request to stay the enforcement of the court judgment is DENIED.

## IV.

Summary judgment is appropriate if "there is no genuine issue of material fact and ... the moving party is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(c). When a moving party supports his or her motion with affidavits and other appropriate materials, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the ... response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A mere scintilla of evidence supporting the case is insufficient. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## V.

The Court turns to Defendant's Motion for Summary Judgment, which hinges on Section 1692g of the Fair Debt Collection Practices Act.

15 U.S.C. § 1692g provides:

(a) Notice of debt; contents

*Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice* containing—

(1) the amount of the debt;

---

false affidavit in state-court garnishment action).

9. In opposing Senftle's Motion to Set Aside Judgment in the state court, Senftle's creditors took the position that, *"assuming arguendo* that there was a violation of the FDCPA

... [Senftle] has failed to establish that his remedy for the alleged violation would be to have the judgment entered against him ... vacated." The Circuit Court denied the motion, underscoring the separate and distinct nature of Senftle's FDCPA claims.

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

*If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed,* or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Fair Debt Collection Practices Act, 15 U.S.C. § 1692g (1977) (emphasis added).

Senftle asserts that Defendants violated the FDCPA when they (1) willfully and intentionally failed to give him the manda-tory notice of consumer rights contained under § 1692g(a), including his right to dispute the alleged debt; (2) denied his right to dispute the debt; (3) failed to disclose that they are debt collectors; and (4) refused to verify the alleged debt as requested by him.

Defendants submit that they did not violate the provisions of 15 U.S.C. § 1692g(a), because the state court summons and complaint were not an "initial communication" which would trigger the notice requirement and because, in any event, MCT provided Senftle with the necessary notice; (2) Senftle waived his right to dispute the debt when he failed to notify MCT of any dispute within thirty (30) days after MCT's initial communication, and, in any event, MCT provided him the necessary verification; (3) Defendants were not required to disclose that they were debt collectors; and, (4) Defendants were not required to verify the debt because Senftle did not timely demand a verification, but, in any case, they verified his debt.

The Court considers Defendants' arguments.

*(1) Whether Defendants Failed to Provide Written Notice Required by § 1692g(a)*

▮ The FDCPA provides that, *"[w]ithin five days after the initial communication* with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice ..." 15 U.S.C. § 1692g(a) (emphasis added).

Senftle alleges that Defendants willfully and intentionally failed to give him the written notice required by § 1692g(a). In response, Defendants contend that their summons and complaint in the collection

action were not "initial communications" under § 1692g(a) and that in any case MCT provided Senftle with the necessary notice.

It is well established that the FDCPA applies to attorneys who regularly engage in debt collection. *See Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that the FDCPA applies to lawyers who regularly attempt to collect debts through litigation, rejecting concerns that such an interpretation would interfere with debt collection lawsuits). It is also clear that a court summons and complaint may constitute an "initial communication" within the meaning of 15 U.S.C. § 1692(g)(a). *Thomas v. Law Firm of Simpson & Cybak,* 392 F.3d 914 (7th Cir.2004) (concluding that "by its terms, . . . the FDCPA's broad definition of a "communication" encompasses the service of a summons and complaint."); *see also Sprouse v. City Credits Co.,* 126 F.Supp.2d 1083, 1089 n. 8 (S.D.Oh.2000) (finding that a summons and complaint served in a state court action constitute "initial communications" under the FDCPA). *But see Vega v. McKay,* 351 F.3d 1334 (11th Cir.2003) (holding that a summons and complaint are not initial communications triggering the debt validation notice of § 1692g(a)); *McKnight v. Benitez,* 176 F.Supp.2d 1301 (M.D.Fl.2001) (same).

The FDCPA defines a "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Congress's broad definition of "communication" plainly extends to the service of a summons and complaint since these pleadings convey information regarding a debtor's debt. Moreover, Congress knew how to except pleadings from the definition of "communication" where it intended to, as it in fact did in

§ 1692e(11), which provides that a debt collector must disclose in its initial communication with the debtor that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," except that the provision does "not apply to formal pleadings made in connection with a legal action." 15 U.S.C. § 1692e(11).

The Seventh Circuit in *Thomas* explains why the service of pleadings may, at least under certain circumstances, may constitute an "initial communication":

> The statute was intended to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices . . . ." S.Rep. No. 382, 95th Cong.2d. Sess. 4, 1, U.S.Code Cong. & Admin.News 1977 at pp. 1695, 1696. [The Seventh Circuit's] interpretation of the statute furthers this objective because it helps ensure that debtors will be informed about their validation rights and that debt collectors, knowing that they are obliged to advise debtors of these rights, will investigate claims before initiating litigation to collect debts . . .
>
> \*   \*   \*   \*   \*   \*
>
> Furthermore, to except the service of pleadings from the definition of "communication" would erode the § 1692g requirement to inform debtors of their validation rights; debt collectors could avoid their obligation to advise debtors of their validation rights altogether by initiating litigation. Such a loophole, creating an end-run around the validation notice requirement, is inconsistent with the drafters' intention of protecting debtors from "unfair, harassing, and deceptive" collection tactics, especially because many debtors cannot afford to hire attorneys to represent them in collection actions.

*Thomas,* 392 F.3d at 917–18.

The Court concludes that a court summons and complaint may constitute an "initial communication" under § 1692a(2), at least when service of those pleadings precedes all other communications to a debtor relative to a given debt.

■ The next question, however, is whether an "initial communication" under § 1692g(a) includes a subsequent debt collector's first "communication" with a debtor, when a prior debt collector has already communicated with that debtor on a given debt and satisfied the statutory notice requirements.

Federal courts have taken divergent positions. At least one federal court has concluded that, because each debt collector must comply with the requirements of § 1692g, each must provide a debtor with validation of debts. *See Griswold v. J & R Anderson Bus. Serv.*, 1983 U.S. Dist. Lexis 20365 (D.Or.1983) (holding that since the FDCPA makes no distinction between initial and subsequent debt collectors, each debt collector must provide information required by § 1692g). Several federal district courts, however, have disagreed. *See Ditty v. CheckRite*, 973 F.Supp. 1320, 1329 (D.Ut.1997) ("Section 1692g does not require another debt collector, undertaking collection efforts after a validation notice has been timely sent, to provide additional notice and another thirty-date validation period."); *Weinstein v. Fink*, 2001 WL 185194 (N.D.Ill.2001) (finding that initial communication with a debtor was made by the first debt collector and not the second debt collector); *Thomas v. Law Firm of Simpson & Cybak*, 2001 WL 1516746 (N.D.Ill.2001) (same) *rev'd on other grounds Thomas*, 392 F.3d 914 (7th Cir. 2004).

■ The Court again looks to the plain language of § 1692g, "[within five days after *the initial communication* with a consumer in connection with the collection of any debt, a debt collector shall unless the following information is contained in *the initial communication* ...], send the consumer written notice." Though "communication" is broadly defined, the statute explicitly refers in the singular to *"the initial communication."* Again, had Congress intended that there might be more than one initial communication with a debtor on a given debt, it certainly could have provided that, such as by explicitly requiring both *initial* and *successive* debt collectors to provide the § 1692g(a) validation notice. In fact, Congress made just such distinctions in § 1692e(11) when it distinguished between *initial* and *subsequent communications* to a debtor on a given debt. *See* 15 U.S.C. § 1692e(11).[10] Here the preeminent canon of statutory interpretation requires the court to "presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (internal quotes omitted). The Court thus holds that there is only one "initial communication" with a debtor on a given debt under § 1692g(a), even though subsequent debt collectors may enter the picture.

**10.** § 1692e provides *inter alia:*

[T]he following conduct is a violation of this section:

   *    *    *    *    *    *

(11) The failure to disclose in the *initial written communication* with the consumer ... that the debt collector is attempting to collect a debt and that any information ob-

tained will be used for that purpose ... and the failure to disclose in *subsequent communications* that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11). (emphasis added).

Finally, it remains to be determined which "communication" in the present case served as the "initial communication" under § 1692g(a). Senftle contends that the service of the pleadings in the state court collection action constituted the initial communication; Defendants, counter that MCT sent Senftle two prior letters: one on June 2001, the other on October 1, 2001 and that either or both of those were the "initial communication."

Francis M. Censullo, a partner in MCT group, has stated on affidavit that MCT initially communicated with Senftle in June 2001. He states that, in connection with its efforts to collect the monies owed by Senftle, MCT sent him the notice required under the FDCPA in June 2001. Censullo's affidavit is accompanied by a computer prototype of the notice MCT purportedly sent to Senftle, *i.e.* a blank form letter, and states that MCT incorporated the specific information regarding Senftle's account in the form letter mailed to him. In his Opposition to the Motion for Summary Judgment, Senftle admits that he received the October 1, 2001 letter from MCT, but denies that he received the June 2001 letter.

Whether Senftle in fact received the June 2001 letter is certainly *material* to his FDCPA claims. Senftle, however, has failed to attach an affidavit attesting to this under oath. This failure is fatal to his claim that he did not receive notice of his rights under 15 U.S.C. § 1692g(a). When opposing a motion for summary judgment, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavit, or by the "depositions, answers to interrogatories, and admissions on file," designate

"specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court, moreover, on May 19, 2005, sent a very specific Memorandum to Senftle, cautioning him to supplement his Opposition to the Motion for Summary Judgment with an affidavit denying receipt of the June 2001 letter under oath. While Senftle provided a supplemental affidavit touching upon several tangential issues, nowhere in it did he affirm under oath, which is to say under penalties of perjury, that he did *not* receive the June 2001 letter. The Court must therefore conclude that there is no *genuine* issue of fact as to whether Senftle received the June 2001 letter, and hence that he in fact received it.

Because this communication preceded all other communications, it constituted the § 1692g(a) "initial communication" to Senftle regarding his debt. It contained all the requisites for written notice under the statute. Having received proper written notice within five days of the initial communication, Senftle was not entitled to a second § 1692g(a) written notice on his debt by subsequent debt collectors.

*Whether Defendants Denied Senftle's Right to Dispute His Debt by Refusing to Verify the Alleged Debt as Requested by Plaintiff*

Senftle also contends that Defendants denied his right to dispute his debt under § 1692g(b). Defendants counter that Senftle waived this right when he failed to mail his dispute within thirty (30) days after MCT's initial communication, and that, in any event, Defendants provided the necessary information.[11] 15 U.S.C.

---

**11.** Although the Court holds that Senftle waived his right to dispute the debt, and that Defendants were therefore under no duty to verify it, the Court also concludes that Defen-

dants satisfied § 1692g(b) by attaching Senftle's contract with HAECFU and his most recent unpaid statements as exhibits to the

§ 1692g(b) provides, "[i]f the consumer notifies the debt collector in writing *within the thirty-day period described in subsection (a) of this section* that the debt . . . is disputed, . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." *Id.* (emphasis added).

The Court has concluded, as a matter of undisputed fact, that Senftle received MCT's June 2001 letter. This June 2001 letter launched the 30–day period within which Senftle could have challenged collection by seeking verification of the debt, which in turn would have required his debt collector to cease collection activities until it provided him with verification. He did not act within the 30 days, but rather 2 months later, on October 5, 2005, when he mailed his response to MCT's October 1, 2005 letter.

Because Senftle waived his right to dispute his debt within the 30–day period provided by § 1692g(a), Defendants had no duty under § 1692g(b) to verify Senftle's debt.

### *Whether Defendants Were Required to Disclose That They Were Debt Collectors*

Finally, Senftle asserts that Defendants violated § 1692e(11) by failing to disclose that they were debt collectors attempting to collect his debt within the pleadings of the collection action. Defendants counter that in connection with formal court pleadings, they were not required to identify themselves as such.

§ 1692e reads as follows:

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in the initial oral communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, *except that this paragraph shall not apply to a formal pleading made in connection with a legal action.*

15 U.S.C. § 1692e(11) (emphasis added).

The Court agrees with Defendants that § 1692(e) unambiguously exempts formal pleadings from its purview. Defendants had no obligation to tell Senftle they were debt collectors.

## VI.

Senftle has created no genuine issue of material fact with respect to any of his FDCPA claims. The Court therefore GRANTS Defendants' Motion for Summary Judgment.

Circuit Court Complaint. *See Thomas,* 392 F.3d at 919–921.