**Robert NICHOLS and Kristina Nichols, Plaintiffs,**

v.

**William J. BYRD, Defendant.**

**No. 3:05–CV–0485–ECR–VPC.**

United States District Court, D. Nevada.

June 13, 2006.

Kristina and Robert Nichols, Roderic A. Carucci, Carucci & Thomas, Thomas R. Brooksbank, Brooksbank & Associates, Reno, NV, for Plaintiffs.

William J. Byrd, Jack G. Angaran and Whitney J. Selert, Georgeson, Thompson & Angaran, Chtd., Reno, NV, for Defendant.

## ORDER

EDWARD C. REED, JR., District Judge.

### I. Procedural Background

On August 31, 2005, Plaintiffs Robert and Kristina Nichols ("Plaintiffs" or "the Nichols") filed a Complaint (# 2) alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and Nevada law by Defendant William J. Byrd ("Defendant" or "Byrd"). On October 11, 2005, Defendant filed a Motion to Dismiss (# 6), which

Plaintiffs opposed (# 8) on October 21, 2005. Defendant replied (# 9) to the Opposition (# 8) on October 31, 2005.

For the reasons stated below, Defendant's motion will be **GRANTED**.

## II. Factual Background

On July 31, 2003, Plaintiffs submitted thirty days notice of their intent to vacate an apartment located at 6060 Silver Lake Road in Reno, which they had been renting from ERGS Property Management ("ERGS"). The Nichols state they moved into a new home in Storey County, Nevada, directly after vacating the apartment in early September. On October 3, 2003, ERGS issued a bill for damage and unpaid rent in the amount of $498.53. When the bill was not paid, ERGS assigned the debt to Collection Services of Nevada ("CSN"). On November 6, 2003, CSN sent a computer-generated validation notice [1] to the Silver Lake Road address. The Nichols claim to have never received this notice and Defendant claims it was not returned to CSN. Plaintiffs claim that they did receive subsequent documents from CSN, including verification of the debt, and Plaintiffs communicated with CSN regarding these documents, but Plaintiffs do not specify the address to which the documents were sent. (Pls.' Opp'n (# 8) 3; Def.'s Mot. (# 6), Exh. G 2, Exh. J.) Defendant's exhibits indicate that CSN sent a notice regarding a potential lawsuit to 47 Av. De La Argent in Sparks [2] on May 14, 2004, and a letter verifying the debt to the same address on May 17, 2004. These documents appear to match the description of the documents Plaintiffs claim to have received.

CSN hired Defendant Byrd to initiate litigation against Plaintiffs. Defendant filed a complaint on December 10, 2004, in the Justice Court of Sparks Township. Defendant states that he determined Plaintiffs' last known address was in Sparks by reviewing CSN's investigation of Plaintiffs' last known address and U.S. Postal Service change of address forms.

Plaintiffs' Complaint (# 2) alleges that Defendant Byrd violated two provisions of the FDCPA, resulting in damages to Plaintiffs. First, they allege Defendant violated 15 U.S.C. § 1692g by failing to provide a validation notice within five days of his initial communication with Plaintiffs regarding the debt. Second, Plaintiffs allege that Defendant violated 15 U.S.C. § 1692i by filing the lawsuit in the wrong court.

## III. Discussion

### A. Fed.R.Civ.P. 12(b)(6)

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will only be granted if "it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and con-

---

1. As will be discussed below, a "validation notice" is a document detailing certain lending rights, including the right to obtain verification of the debt, and must be sent in the early stages of debt collection under 15 U.S.C. § 1692g.

2. Both Sparks and Reno are located in Washoe County, Nevada, which is adjacent to Storey County, Nevada.

strued in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir.1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.,* 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R.Civ.P. 12(b)(6) is normally limited to the complaint itself. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed.R.Civ.P. 12(b); *see United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). A party represented by counsel has constructive notice that a motion to dismiss may be treated as a motion for summary judgment where exhibits outside the pleadings have been submitted. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,* 611 F.Supp. 110, 113 n. 7 (D.Nev.1985) (citing *Grove, Riddle, & Riddle v. Mead School Dist.,* 753 F.2d 1528, 1532–33 (9th Cir.1985)) *aff'd in part, vacated in part, rev'd in part on other grounds by* 911 F.2d 1331 (9th Cir.1990).

Here, Defendant has attached and referred to exhibits to his motion (# 6), and Plaintiffs have responded to those arguments and attached exhibits of their own, thus indicating notice of potential treatment as a motion for summary judgment. While the exhibits offered by Plaintiffs only support their legal arguments rather than any factual bases, Plaintiffs do not challenge the validity of Defendant's docu-ments, nor do they offer any basis to demonstrate that they were unable to offer evidence to contradict Defendant's evidence, other than a vague reference to discovery not having been completed. Therefore, we will treat Defendant's motion (# 6) as one for summary judgment.

**B.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.,* 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom "in the light most favorable to the nonmoving party," *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered

by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary Judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

**1. 15 U.S.C. § 1692g—Validation Notices**

Plaintiffs allege that Defendant violated FDCPA § 1692g by failing to provide a validation notice prior to his filing the lawsuit in December of 2004. Section 1692g(a) provides in pertinent part:

[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written [validation] notice containing [certain pieces of information pertaining to the debt and the debtor's rights].

Plaintiffs argue that the summons they received was Defendant's "initial communication" according to § 1692g and, therefore, Defendant was required by the statute to provide a validation notice. It is undisputed by the parties that CSN, which had hired Defendant to pursue the lawsuit, had sent a validation notice within five days of its initial communication in November of 2003.[3] Thus, the main question to be resolved is whether Defendant was also required to provide a validation notice as a subsequent debt collector of the same debt.

■ As will be discussed below, there are many facets to this question, and most have yet to be fully resolved by the Ninth Circuit. However, enough persuasive authority exists for each facet to lead us to a finding that Defendant was not required to supply a second validation notice.

■ First, we find that Defendant is a debt collector for purposes of the FDCPA, and thus must adhere to the act's requirements. The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Defendant states in his affidavit that he is "on retainer for and ha[s] worked with CSN on many prior occasions to initiate litigation on its behalf in the legitimate collection of its assigned debts." Thus, Defendant is a debt collector bound by the requirements of § 1692g.

---

**3.** The potential relevance of the fact that the notice was sent to Plaintiffs' old address, the apartment they had vacated, and that Plaintiffs claim to have never received it, will be discussed below.

■ Second, we find that the initiation of a lawsuit seeking recovery of a debt may be an initial communication triggering the validation notice requirement under § 1692g. While there is somewhat of a circuit split on the subject, we find the analysis engaged in first by the Seventh Circuit, and most recently by the Second Circuit, to be the most persuasive. *See Goldman v. Cohen,* 445 F.3d 152, 155 (2nd Cir.2006); *Thomas v. Law Firm of Simpson & Cybak,* 392 F.3d 914, 917–19 (7th Cir.2004) (en banc). In *Goldman v. Cohen,* the Second Circuit first considered the clear meaning of the statute, which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person *through any medium."* 445 F.3d. at 155 (quoting 15 U.S.C. § 1692a(2) and adding emphasis). The court then reasoned that because the FDCPA applied to attorneys engaged in litigation, and because pleadings were not specifically excluded from the provision defining "communication," while other provisions did specifically exclude pleadings, it follows that the term "communication" includes legal pleadings. *Id.* at 155–56. Finally, the Second Circuit distinguished the holding of the one circuit which had excluded legal pleadings from § 1692g requirements by noting that said holding was primarily based on a Staff Commentary by the Federal Trade Commission which had been specifically repudiated in a subsequent Federal Trade Commission advisory opinion in light of the *Heintz* decision's inclusion of attorneys as debt collectors within the FDCPA. *Id.* at 157, n. 5 (distinguishing *Vega v. McKay,* 351 F.3d 1334 (11th Cir.2003)); (*see also* Pls.' Opp'n (# 8), Exh. A 658). We are persuaded by the reasoning of the Second and Seventh Circuits and, thus, also find that the initiation of a lawsuit may be an initial communication for purposes of § 1692g.

However, we are faced with a particular factual twist in that a debt collector other than Defendant, but with whom Defendant is affiliated in collection of this debt, allegedly had properly sent Plaintiffs a validation notice. Thus, our question is not merely whether the initiation of litigation *can* be an initial communication, but whether *Defendant's* initiation of litigation was an initial communication triggering § 1692g, given CSN's prior communications with Plaintiffs. Again, while there appears to be no Ninth Circuit authority on the subject, we are able to find guidance in well-reasoned persuasive authority.

In *Senftle v. Landau,* a District of Maryland court also faced the question of whether each debt collector is required to submit a validation notice for a given debt. 390 F.Supp.2d 463 (D.Md.2005). The *Senftle* court examined the plain meaning of the statute, which requires that the debt collector provide a validation notice within five days of "the initial communication with a consumer in connection with the collection of any debt ... unless the ... information is contained in the initial communication ...." 15 U.S.C. § 1692g. Thus, the statute, which uses the passive voice for "the initial communication," does not indicate that the initial communication and the validation notice must be made by the same debt collector. Further, the statute only identifies a single initial communication. *See Senftle,* 390 F.Supp.2d at 473 ("[T]he statute explicitly refers in the singular to '*the initial communication.*' "). As stated by the *Senftle* court, "had Congress intended that there might be more than one initial communication with a debtor on a given debt, it certainly could have provided that, such as by explicitly requiring both *initial* and *successive* debt collectors to provide the § 1692g(a) validation notice." *Senftle,* 390 F.Supp.2d at 473. Therefore, the court found that a subsequent debt collector's first communication on a given debt is not an initial communication for purposes of § 1692g, where a

"prior debt collector ha[d] already communicated with that debtor on [that] debt and satisfied the statutory notice requirements." *Id.*

We agree with the District of Maryland and find that where a validation notice had been sent by a debt collector, another debt collector hired to litigate for collection of that same debt need not supply a second validation notice. In such a situation, the lawsuit is a subsequent communication that does not trigger the requirements of § 1692g.

The next question, then, is whether there is a genuine issue of material fact as to whether or not Defendant's lawsuit was the initial communication. It is undisputed by the parties that CSN sent a validation notice within five days of its initial communication. However, the Nichols claim to have not received this notice, which was sent to the address of the apartment they had vacated three months prior.

The Ninth Circuit has held that the clear language of § 1692g provides that a validation notice must simply be sent, and need not be received, in order to fulfill the requirements of the statute. *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201–02 (9th Cir.1999) (also noting lack of evidence that Defendants failed to follow established business practice in sending computer-generated notices to last known address). Still, that case is somewhat distinguishable in that while its notice was sent to the plaintiffs' actual address, in the case at bar, CSN sent the notice to an apartment the creditor knew had been vacated by the Plaintiffs. In such circumstance, it would seem that some amount of research would be expected of the debt collector to ascertain the current address.

However, while we question the method employed by CSN, we do not find that Defendant should be held liable for CSN's short-sightedness, particularly given the undisputed facts that CSN sent a validation notice, Plaintiffs received a verification letter, and Defendant had notice of both these facts.[4] Because notification of the right to request a verification notice is the primary safeguard of the validation notice, and Plaintiffs asked for and received a verification notice, the goal of § 1692g was satisfied regardless of whether or not Plaintiffs received the validation notice. Plaintiffs were appraised of their rights and acted upon them prior to Defendant's commencement of litigation. Further, Plaintiffs admit that CSN sent an initial communication "which attempted to comply with the validation notice mandate[s]" (Pls.' Opp'n 3), and Plaintiffs focus their arguments and lawsuit only on Byrd's failure to send a validation notice, not CSN's. Thus, Plaintiffs have not raised a material factual dispute regarding Defendant's compliance with § 1692g.

Therefore, given that the statute only requires that the validation notice be sent, the lack of evidence that CSN failed to engage in its standard business practices in sending the notice to the last known address, Plaintiffs' acknowledged receipt of a verification letter sent from CSN to the Sparks address, and Defendant's subsequent efforts to ascertain the status of CSN's communications with Plaintiff through investigation of CSN's records, and to ascertain Plaintiffs' correct address through postal records, we find that Defendant appropriately determined that the mandates of § 1692g had been followed by CSN and that no subsequent validation notice was required.[5]

4. Under § 1692g, the validation notice includes language notifying the debtor to request verification of the debt within 30 days of receipt of the validation notice.

5. Plaintiffs further contend that the validation

Thus, we find that Plaintiffs have failed to raise a genuine issue of material fact that Defendant Byrd violated FDCPA § 1692g's validation notice requirement. Byrd was not required to send a second validation notice where a notice had been sent in conjunction with the initial communication to the last known address.

## 2. 15 U.S.C. § 1692i—Venue Provision

Section 1692i(2) of the FDCPA requires that lawsuits initiated to reclaim a debt be brought "only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." Plaintiffs allege Defendant violated 1692i(2) and damaged Plaintiffs by filing the lawsuit in the Justice Court of Sparks Township, when Plaintiffs did not reside in Sparks at the time the lease was signed nor at the time the lawsuit was commenced. Defendant argues that his venue selection was not improper because the Sparks and Reno Justice Courts are within the same state judicial district and, in the alternative, that the filing decision was a bona fide error protected by 15 U.S.C. § 1692k.

█ The Ninth Circuit rejected a similar argument to the first offered by Defendant when it held that separate county courts within a judicial district were separate venues for purposes of the FDCPA. *Fox v. Citicorp Credit Services*, 15 F.3d 1507, 1515 (9th Cir.1994). The court found that the words "judicial district or similar legal entity" encompassed county courts and noted a state mechanism for transfer between the courts. *Id.* In Nevada, actions for the recovery of a sum of less than

$10,000 are to be brought in the justice courts, which primarily encompass townships. *See* Nev.Rev.Stat. 4.370(1)(a), 4.360. Nevada provides a statutory exception extending jurisdiction of the justice courts to the limits of their respective counties for criminal cases, but has no such exception extending jurisdiction for civil cases. *See* Nev.Rev.Stat. 4.370(4). Thus, jurisdiction of the justice courts for civil matters appears to be limited by the state to the township itself. Therefore, taking as true Plaintiffs' claim that they lived in Storey County at the time litigation was commenced, we find that Defendant violated FDCPA § 1692i by filing the lawsuit in the wrong justice court.

We next consider Defendant's alternative argument that such filing was a bona fide error entitling him to an affirmative defense. Under 15 U.S.C. § 1692k(c), "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See also, Fox*, 15 F.3d at 1514 (requiring "evidence supporting the existence of 'reasonable preventive procedures'" in order to establish bona fide error defense).

Defendant claims he filed the lawsuit in Sparks Township because he believed Sparks to be the jurisdiction in which Plaintiffs resided at the commencement of litigation. Defendant submitted an affidavit claiming to have "reviewed investigation results of the Nichols' last known address, including the last filed correction

---

notice could not be attributed to Defendant's lawsuit because the two communications stated different amounts for the debt. We might agree with Plaintiffs had the debt *amount* of the lawsuit been in excess of the amount set forth in the validation notice. However, because the amount sought through the lawsuit was a lesser amount than that for which Plaintiffs were notified, we find that the amount was encompassed within the original notification.

form with the U.S. Postal Service" prior to initiation of litigation, and determined the Sparks address to be proper. (Def.Mot.(# 6), Exh. G ¶ 8.) Plaintiffs respond that such a self-serving statement, made prior to discovery and absent more specific evidence of procedures undertaken to avoid errors, fails to establish a preponderance of the evidence.

We agree with Plaintiffs that this is a fact-driven inquiry and that the record is less than complete at this stage. However, we find that Defendant's review of address correction forms is evidence of a "reasonable preventative procedure." *See Fox,* 15 F.3d at 1514. In addition, Defendant's review of CSN's records indicated that the Plaintiffs had responded to letters sent by CSN to a Sparks address, which in itself supplied Defendant with a basis for believing the Sparks address to be accurate. Further, we presume that even without discovery, Plaintiffs still would have had access to evidence to contradict claims that the latest change of address form on file indicated their residence was Sparks, NV, or that such a conclusion was unreasonable, if that was indeed the case. While further discovery could potentially bolster the claims of either side, we do not see how Plaintiffs could lack some evidence of their proper residence to contradict Defendant's modest offering at this stage of the proceedings, unless that evidence simply did not exist. We, therefore, find that Plaintiffs have failed to establish a genuine issue of material fact that Defendant's filing of the lawsuit in Sparks Township was not the result of bona fide error and summary judgment on this issue is appropriate.

### 3. State Claims and Class Certification Issue

Because we have found summary judgment to be appropriate on both federal claims, we decline to exercise supplemental jurisdiction on the state claims alleged in the complaint. *See* 28 U.S.C. § 1367(c). Further, because the underlying § 1692g claim is being dismissed, the class certification claim for that issue also must be dismissed.

***IT IS, THEREFORE, HEREBY ORDERED*** that, as addressed above, the Defendants' Motion to Dismiss (# 6), treated as a Motion for Summary Judgment is **GRANTED** as to all claims.

***IT IS, FURTHER, HEREBY ORDERED*** that the clerk shall enter judgment accordingly.