# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1113

FRANK THOMAS,

*Plaintiff-Appellant,*

v.

LAW FIRM OF SIMPSON & CYBAK, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 C 8211—**David H. Coar**, *Judge.*

———————

REARGUED EN BANC JUNE 2, 2004—DECIDED DECEMBER 20, 2004[*]

———————

Before POSNER, COFFEY, EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, WOOD, EVANS, and WILLIAMS, *Circuit Judges.*[**]

WILLIAMS, *Circuit Judge.* Frank Thomas appeals from the district court's dismissal of his suit which alleged that

———————

[*] An opinion in this case was originally issued on January 13, 2004. On February 10, 2004, the panel, on its own motion, vacated its opinion and judgment. The case was submitted for circulation pursuant to Circuit Rule 40(e) and a majority of the active judges on the court favored rehearing en banc.

[**] Chief Judge Flaum and Circuit Judge Sykes took no part in the consideration of this matter.

General Motors Acceptance Corporation ("GMAC"), the law firm Simpson & Cybak ("Simpson"), and their employees failed to send him a debt validation notice advising him of his rights as a debtor within five days of their initial communication with him, as is required by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o. Two principal questions are raised in this appeal: whether a creditor's letter to a debtor and whether a debt collector's initiation of a lawsuit in state court constitute "initial communications" within the meaning of the FDCPA. In dismissing Thomas's case for failure to state a claim, the district court determined that the creditor's letter to the debtor constituted an "initial communication," while the debt collector's initiation of the lawsuit did not. We disagree with both conclusions. Accordingly, we reverse the district court's decision to dismiss Thomas's claim against Simpson, and we remand for further proceedings.

## I. BACKGROUND

In January 1998, Frank Thomas purchased a Chevrolet Blazer from Apple Chevrolet under an installment contract immediately assigned to GMAC. Around January 20, 2000, shortly after Thomas lost his job with GMAC, he received a default letter from GMAC operations manager Kay Candiano on GMAC letterhead informing him that his payment on the vehicle was past due.

On March 27, 2000, GMAC, through its attorneys, Simpson & Cybak, sued Thomas in Illinois state court to recover the vehicle. Kathleen Haggerty, a Simpson lawyer, signed the complaint. The complaint included a statement that, "[p]ursuant to the [FDCPA], you are advised that this law firm is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." The summons included similar language.

Thomas filed suit against GMAC and Simpson under the FDCPA, claiming that neither party sent him a debt vali-

dation notice advising him of his rights as a debtor. *See* 15 U.S.C. § 1692g(a). The district court granted both defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thomas now appeals.

## II.  ANALYSIS

We review de novo the district court's dismissal of Thomas's complaint for failure to state a claim, accepting as true the well-pleaded allegations in Thomas's complaint and drawing all reasonable inferences in his favor. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

The FDCPA requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector" must send the debtor a written validation notice containing certain information. 15 U.S.C. § 1692g(a). The notice must inform the debtor of the amount of the debt, the name of the creditor, and state that the debt will be assumed valid if the debtor does not dispute its validity within 30 days of the receipt of the notice. *Id.* § 1692g(a)(1)-(3). Furthermore, the notice must include a statement that if the debtor disputes the debt within 30 days of the notice, the debt collector will obtain and send the debtor verification of the debt and, upon written request, send the debtor the name and address of the current creditor, if different from the original creditor. *Id.* § 1692g(a)(4)-(5).

Thomas argues that neither GMAC nor Simpson notified him of these debt validation rights. Thomas primarily contends that the summons and complaint Simpson filed initiating state court litigation against him constituted an "initial communication" under the FDCPA, and Simpson was therefore required to notify him of his validation rights within five days of the service of that communication.

As an initial matter, we must decide whether GMAC's January 20, 2000 default letter to Thomas constitutes an

"initial communication" for purposes of the FDCPA. Despite the district court's finding to the contrary, all parties to this appeal now concede that the letter does not constitute an "initial communication" regarding a debt under the FDCPA.

The FDCPA defines a "communication" broadly: "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). But, because the Act regulates debt collectors rather than creditors, *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), GMAC's letter to Thomas—a letter from a creditor[1]—does not qualify as an "initial communication" under the Act. Because the FDCPA makes debt collectors, but not creditors, responsible for notifying debtors of their validation rights, *see* 15 U.S.C. § 1692g(a), finding that a letter from a creditor constitutes an "initial communication" could create significant unintended obligations for debt collectors. For example, if a letter from a creditor constitutes an "initial communication," debt collectors would be responsible for notifying debtors of their debt validation rights within five days of an "initial communication" that the debt collector did not send, or for one communicated even before the creditor retained the debt collector. Nothing in the FDCPA suggests that Congress intended creditors' unilateral actions to obligate debt collectors to inform debtors of their rights; rather, the Act is intended to deter debt collectors from employing their own abusive tactics.

---

[1] The district court found that GMAC was a creditor. *Thomas v. Law Firm of Simpson & Cybak*, No. 00 C 8211, 2001 WL 1516746, at *3 (N.D. Ill. Nov. 28, 2001). A creditor includes "any person who offers or extends credit creating a debt or to whom a debt is owed. . .," whereas a debt collector includes "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(4), (6).

Because we decide that GMAC's letter to Thomas does not constitute an initial communication for FDCPA purposes, no obligation to inform Thomas of his validation rights arose upon the sending of the letter.

The principal question remains, whether Simpson's service of a summons and complaint, filed in state court, was an "initial communication" within the meaning of the FDCPA, such that its service triggered an obligation to notify Thomas of his validation rights within five days. Simpson concedes that it is a debt collector as defined in § 1692a(6), but argues that pleadings do not constitute "communications." The courts that have addressed this issue are divided in their analyses. *Compare, e.g., Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003) (holding that a summons and complaint do not constitute "initial communications" triggering the debt validation notice requirements of § 1692g), *and McKnight v. Benitez*, 176 F. Supp. 2d 1301, 1306-08 (M.D. Fla. 2001) (same), *with Sprouse v. City Credits Co.*, 126 F. Supp. 2d 1083, 1089 n.8 (S.D. Ohio 2000) (finding that a summons and complaint served in a state court action constitute "initial communications" under the FDCPA).

By its terms, as stated above, the FDCPA's broad definition of a "communication" encompasses the service of a summons and complaint. When Simpson served the summons and complaint, it conveyed information regarding Thomas's debt. The plain language of a statute "should be conclusive 'except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir. 1995) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242 (1989)). This is not such a case; rather, viewing the service of a summons and a complaint as an "initial communication" is consistent with the drafters' intent.

The statute was intended to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices. . . ." S. Rep. No. 382, 95th Cong. 2d. Sess. 4, 1. Our

interpretation of the statute furthers this objective because it helps ensure that debtors will be informed about their validation rights and that debt collectors, knowing that they are obliged to advise debtors of these rights, will investigate claims before initiating litigation to collect debts. Defendants' argument that state courts offer sufficient protections to guard against abusive debt collection tactics during litigation is unpersuasive. The FDCPA affords different protections than state court; debt collectors who violate its provisions may be subject to civil liability. *See* 15 U.S.C. § 1692k.

Furthermore, to except the service of pleadings from the definition of "communication" would erode the § 1692g requirement to inform debtors of their validation rights; debt collectors could avoid their obligation to advise debtors of their validation rights altogether by initiating litigation. Such a loophole, creating an end-run around the validation notice requirement, is inconsistent with the drafters' intention of protecting debtors from "unfair, harassing, and deceptive" collection tactics, especially because many debtors cannot afford to hire attorneys to represent them in collection actions. Congress was careful to except pleadings from the definition of "communication" where it so intended. Section 1692e(11) provides that a debt collector must disclose in its initial communication with the debtor that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," except that the provision does "not apply to formal pleading[s] made in connection with a legal action." 15 U.S.C. § 1692e(11). No such pleadings exception exists in § 1692g.[2]

---

[2] We are aware that Congress has proposed a bill amending the FDCPA to specifically exclude formal pleadings from the definition of a communication for purposes of 15 U.S.C. § 1692g, *see*

(continued...)

Defendants contend that we should ignore the FDCPA's plain language because deeming the service of a summons and complaint an "initial communication" would interfere with litigation by making debt collection lawsuits more cumbersome for attorneys. In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court considered and, in light of the FDCPA's plain language, rejected similar arguments.

The Court held that the FDCPA applies to lawyers who regularly attempt to collect debts through litigation. *Heintz*, 514 U.S. at 292. In so holding, the Court considered § 1692c(c), which prohibits debt collectors from communicating with consumers if the consumer requests that the debt collector cease communication. The Court recognized, "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* at 296. But the Court noted that such a reading was unnecessary, as § 1692c(c) allows communication to "notify the consumer that the debt collector or creditor intends to invoke a specified remedy," an exception that could be read as allowing communications in the form of court-related documents. The Court thought it more prudent to read the § 1692c(c) exception that way than to "create a far broader exception, for all litigating attorneys," given the absence of such an explicit exception in the Act itself. *Id.* at 296-97. Thus, the Court's opinion suggests that to the extent that they can be ameliorated, concerns about interfering with litigation are alone insufficient to warrant ignoring the statute's plain language.

Nonetheless, some of defendants' concerns warrant further discussion, as they claim our holding will create a host of

---

[2]  (...continued)
H.R. 3066, 108th Cong. (2003), but as an interpretative body, we must interpret the law as it existed at the time the dispute arose.

practical difficulties; however, these practical difficulties can be overcome. Section 1692g(b) directs debt collectors to cease their collection efforts if within 30 days of receiving the debt validation notice, the consumer seeks verification of the debt. Thus, a consumer could potentially halt a lawsuit by requesting verification of the debt.[3] This problem is not insurmountable. A debt collector need not make the summons and complaint its first communication with the debtor; rather, it can have its initial communication with the debtor upwards of 30 days before it intends to initiate litigation. After the thirty-day verification period has expired, the debt collector can then initiate litigation without fear that the debtor will "interfere" with the suit by seeking verification of the debt.

Sending the notice in advance also avoids other complications. Some states prohibit the inclusion of other documents with the summons and complaint. A debt collector avoids running afoul of such a rule by sending the notice separately, either in advance or within five days of the initial communication. After all, the FDCPA does not require debt collectors to notify debtors of their rights in the initial communication itself. *See* 15 U.S.C. § 1692g(a).

Sending the notice along with the pleadings, or shortly thereafter, might also confuse the debtor. A debtor must comply with deadlines imposed by court rules and judges, even if that debtor has requested verification of the debt. While the §1692g notice indicates that the debtor has 30

---

[3] In a typical case this is not a significant problem, as the debt collector can resume its collection activities once it sends the debtor verification of the debt. *See Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) (noting that a debt collector simply must "cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor"). But a debtor could act strategically by requesting verification just before a court filing deadline.

days to dispute his debt, in federal court a defendant must answer a complaint within 20 days of its filing. Fed. R. Civ. P. 12(a)(1)(A). Failing to timely file an answer could result in a default judgment. Fed. R. Civ. P. 55(a). Thus, the validation notice could potentially give a debtor the false impression that it has 30 days before it is required to take any action in the lawsuit.

Nonetheless, there may be instances when a debt collector believes delay in initiating a lawsuit is unwise, such as when it fears the debtor will dissolve assets. Given the potential for confusion, a debt collector who chooses to send the validation notice either with the summons and complaint or shortly thereafter should take care to phrase its notice so as to not mislead. It should make clear that the advice contained in the § 1692g validation notice in no way alters the debtor's rights or obligations with respect to the lawsuit, emphasizing that courts set different deadlines for filings.

As we have in cases addressing other FDCPA provisions, *see Miller v. McCalla, Raymer, Padrick, Cobb, Nichols and Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997), we think it helpful to suggest explanatory language for debt collectors to use. A debt collector who chooses to send the § 1692g validation notice with the summons or complaint or shortly thereafter can send a carefully worded notice, such as one containing the following language, to comply with the FDCPA without disrupting the litigation process:

> This advice pertains to your dealings with me as a debt collector. It does not affect your dealings with the court, and in particular it does not change the time at which you must answer the complaint. The summons is a command from the court, not from me, and you must follow its instructions even if you dispute the validity or amount of the debt. The

> advice in this letter also does not affect my rela-
> tions with the court. As a lawyer, I may file papers
> in the suit according to the court's rules and the
> judge's instructions.

We note that an additional potential complication exists under § 1692c(a)(2), which prohibits debt collectors from communicating with a debtor it knows to be represented by counsel. If pleadings are "communications" under the FDCPA, in any jurisdiction in which a defendant must be personally served, a debtor could arguably thwart service by simply retaining an attorney.[4] But other exceptions within § 1692c could be read to allow for service. For instance, § 1692c(a) permits communication with debtors represented by attorneys with the express permission of the court. Court rules permitting service could be interpreted as granting such express permission.

The above-referenced practical difficulties are not insurmountable and, thus, do not warrant overriding the Act's plain language. *See Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995) (commenting that "[w]e should not disregard plain statutory language in order to impose on the statute what we may consider a more reasonable reading."). Accordingly, we hold that Simpson's service of the summons and complaint was an "initial communication," which triggered its obligation to notify Thomas of his validation rights. In so holding, we recognize that we part company from the Eleventh Circuit, which reached a contrary result. *See Vega*, 351 F.3d at 1337. But the Eleventh Circuit relied principally on non-binding Federal Trade Commission ("FTC") staff commentary issued before

---

[4] We hold today only that the service of a summons and complaint is a "communication" for § 1692g purposes. Whether pleadings constitute "communications" under other provisions of the Act, such as § 1692c, is not before us.

*Heintz, see* Federal Trade Commission—Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (1988), to which we do not give significant weight. *See Heintz*, 514 U.S. at 298 (declining to give much weight to FTC staff commentary discussing the FDCPA's application to attorneys). Indeed, the FTC itself, in a more recent Advisory Opinion letter issued in 2000 noted the following: "In light of *Heintz*, the Commission concludes that, if an attorney debt collector serves on a consumer a court document 'conveying information regarding a debt,' that court document is a 'communication' for purposes of the FDCPA." Federal Trade Commission-Staff Opinion Letter of March 31, 2000, at 3, available at http://www.ftc.gov/os/2000/04/fdcpaadvisoryopinion.htm. The FTC may think it wise to issue advisory opinions providing guidance for the many variations that lawyers may encounter in their roles as statutory debt collectors, and 15 U.S.C. § 1692k(e) provides that no liability results from good faith reliance on such opinions.

Because we have concluded that the service of a summons and complaint by a debt collector constitutes an "initial communication" under the FDCPA, Thomas has stated a viable claim for violation of 15 U.S.C. § 1692g.


### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal under Rule 12(b)(6) of Thomas's claim against Simpson and REMAND for further proceedings consistent with this opinion.


EVANS, *Circuit Judge*, joined by COFFEY, MANION, and KANNE, *Circuit Judges*, dissenting. I agree that the FDCPA's definition of "communication" *could* be read to encompass the filing of a summons and complaint by a lawyer. But I don't think it *should* be read that way. To do so, I submit,

leads to a result that is not consistent with the purpose of the FDCPA, nor with the traditional view of what lawyers must do when they take a pivotal step in their relationship with a client—instituting formal legal proceedings in a court of law.

No doubt, lawyers can be "debt collectors" when they act like them—by engaging in the kind of "unfair, harassing and deceptive debt collection practices" that the FDCPA is designed to protect against. *See Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) (lawyer sending out dunning letters is a "debt collector" subject to the FDCPA). But in this case, the lawyers were not sending dunning "communications" to Mr. Thomas. Instead, they were doing what lawyers traditionally do—filing a lawsuit in state court on behalf of their client. To hold that they must include in their court pleadings all the notice/validation, etc. information required by the FDCPA seems very odd indeed. And it will also be very confusing—"you have 20 days to answer the complaint" and "30 days to dispute the validity and request verification of the debt." All of which will make even a sophisticated defendant scratch his head and say "Huh?".

As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir. 1987). But we have long recognized that a section of a statute should not be read in isolation from the context of the statute as a whole. *See Nupulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 549 (7th Cir. 1988). We also have noted that "the Supreme Court has recognized limitations on the requirement that statutory language be interpreted literally. A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute." *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir. 1987) (citing *In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643 (1978)).

To include the filing of a summons and complaint in the definition of a "communication" with a debtor under the

FDCPA runs counter to the intent of the statute and creates inconsistency, as Judge Moody, in *McKnight v. Benitez*, 176 F. Supp. 2d 1301 (M.D. Fla. 2001), astutely observed:

> The purpose of the Act, as stated in § 1692(e), is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." That language indicates that Congress intended to regulate unscrupulous practices of debt collectors and level the playing field for debt collectors who do not use abusive practices. There is no indication whatsoever that Congress considered state law legal remedies to be "abusive," nor does it appear necessary to alter the procedures for filing state lawsuits to level the playing field. After all, if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought.
>
> Moreover, Congress did not overlook legal actions as being potentially abusive. It made a specific provision in the Act, in a section entitled "Legal Actions by Debt Collectors," to regulate venue, the place where a lawsuit could be filed. Had it wished to alter the timing of the filing or create other changes in existing legal remedies to curb "abuses," it would have been logical to do so there. Or, specific mention of legal actions could have been made within the definition of "communication." The absence of doing so is one indication that Congress did not intend the revolutionary changes to long-standing judicial remedies which are required if a legal action is considered a "communication" within the meaning of the Act.

176 F. Supp. 2d at 1305.

Recently, the Eleventh Circuit considered whether *McKnight* was correctly decided and concluded, unequivocally, that it was. *Vega v. McKay*, 351 F.3d 1334 (11th Cir. 2003) (per curiam). To quote our sister circuit: "We now conclude that the holding of *McKnight*, that a legal action does not constitute an 'initial communication' within the meaning of the FDCPA, accurately states the law." *Id.* at 1337. We should not be creating a circuit split on this issue.

Finally, as the majority notes, a bill is pending in Congress to amend the FDCPA to specifically exclude formal pleadings from the definition of a communication under 15 U.S.C. § 1692g, *see* H.R. 3066, 108th Cong. (2003). While this might well be an indication that Congress considers the FDCPA's current definition of "communication" to include the filing of a summons and complaint, I think it's more likely that the purpose of the proposed amendment is to make explicit what is clearly implicit. For what it's worth, I think the proposed amendment is more easily viewed as an effort to curtail erroneous interpretations, like the one the majority makes here.

For these reasons, I respectfully dissent.

No. 02-1113                                                   15

A true Copy:

   Teste:


                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*