In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2745

APRIL MCMILLAN,

*Plaintiff-Appellant*,

*v.*

COLLECTION PROFESSIONALS,
INCORPORATED, an Illinois
corporation,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6921—**Blanche M. Manning**, *Judge.*

ARGUED JANUARY 10, 2006—DECIDED JULY 7, 2006

Before BAUER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.* April McMillan brought this action against Collection Professionals, Inc. ("CPI"). She alleges that a collection letter that she received from CPI violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The district court held that Ms. McMillan's claim failed to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). Ms. McMillan now appeals the dismissal of her claim. For the reasons stated in the following opinion, we reverse the judgment of

the district court and remand the case for further proceedings consistent with this opinion.

# I

# BACKGROUND

## A. Facts

Ms. McMillan received a letter from CPI dated December 8, 2004; it demanded payment for a dishonored check that had been made payable to "Testa IGA" for $86.43 as well as payment of $146.05 for unspecified "Previous Debts." R.1, Ex.A. The letter stated in pertinent part:

> **YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH**
>
> Your creditor believed you to be honest when credit was extended.
>
> The injustice of permitting this account to become past due and then ignoring all requests for payment, casts a doubt of good intentions.
>
> We would like to give you this final opportunity to prove your honesty and good intentions. Payment in full or satisfactory arrangements for payment must be made without further delay.
>
> Collection Professionals, Inc., is a debt collection agency. This is an attempt to collect a debt and any information will be used for that purpose.

*Id.* (emphasis in original).

In her complaint, Ms. McMillan alleged that the letter used "false, deceptive, or misleading representation[s] or means" in violation of 15 U.S.C. § 1692e and that the letter

was an attempt to disgrace her in violation of 15 U.S.C. § 1692e(7). She also alleged that the letter employed unfair or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f.

CPI filed an answer to Ms. McMillan's complaint, and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] In its motion, CPI submitted that the language in the letter was true and accurate, and Ms. McMillan therefore did not state a claim under § 1692e. CPI also contended that the letter did not state or imply that Ms. McMillan had committed a crime or other fraud, so she had not stated a claim under § 1692e(7). CPI further submitted that, because the letter contained only true statements, it could not be considered "unfair or unconscionable" within the meaning of 15 U.S.C. § 1692f.

## B. District Court Disposition

Initially, the district court recognized that the FDCPA should be construed broadly to protect the "unsophisticated consumer." R.17 at 2 (quoting *Marshall-Mosby v. Corporate*

---

[1] In CPI's answer to Ms. McMillan's complaint, it stated that Ms. McMillan had failed to assert a claim upon which relief can be granted. *See* R.5 at 4-5. Under Federal Rule of Civil Procedure 12(h)(2), a defendant's motion to dismiss for failure to state a claim can be included in an answer. However, CPI then filed a separate 12(b)(6) motion to dismiss. *See* R.12. We have held that a 12(b)(6) motion filed after an answer has been filed is to be treated as a 12(c) motion for judgment on the pleadings and can be evaluated under the same standard as a Rule 12(b)(6) motion. *See Lanigan v. Vill. of East Hazel Crest, Illinois*, 110 F.3d 467, 470 n.2 (7th Cir. 1997).

*Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000)). Neverthe-
less, the court determined that, in this case, "[Ms.] McMillan
wrote a check to a third-party which was returned for
insufficient funds and did not cure the bounced check." *Id.*
The court therefore held that "[s]tating that the third-party
'believed her to be honest when credit was extended' was
not intended to disgrace McMillan and is not an unfair
statement." *Id.* (original alterations omitted).

The district court then distinguished cases, relied upon by
Ms. McMillan, in which we had held that an FDCPA
complaint can survive a motion to dismiss under 12(b)(6)
simply by alleging that a collection letter was confusing.
*Id.* (citing *Marshall-Mosby*, 205 F.3d at 326; *Johnson v. Revenue
Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999)). The district
court stated that these cases involved claims brought under
15 U.S.C. § 1692g, which requires certain language in an
initial debt collection letter. *Id.* Because no claim under
§ 1692g had been brought in this case, the district court held
that those cases were inapplicable. *Id.*[2]

---

[2]  The district court also stated that the letter at issue in this case
does not contain the requisite language in § 1692g. R.17 at 2.
Section 1692g states that within five days of the initial communi-
cation, the debt collector must provide certain information to the
debtor, including the amount of debt and a statement that the
debtor has thirty days to contest the validity of the debt before it
will be assumed to be valid. *See* 15 U.S.C. § 1692g(a)(1) and (a)(3).
The court gave Ms. McMillan leave to file an amended complaint
alleging a violation of § 1692g; instead, however, Ms. McMillan
appealed the dismissal of her complaint.

## II

## DISCUSSION

We review a district court's grant of a dismissal under Rule 12(b)(6) de novo, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). The plaintiff's claims should survive dismissal if relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.*

When assessing an FDCPA claim, we view the claim through the eyes of an "unsophisticated debtor."[3] *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994) (stating that such a standard "protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness"). In the context of a § 1692g claim, we have stated that "[h]ow a particular notice affects its audience is a question of fact, which may be

---

[3] Other circuits use a "least sophisticated consumer" standard rather than our "unsophisticated" standard. *See Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). We have noted that the "least sophisticated consumer" contemplated by other circuits is "the very last rung on the sophistication ladder"—the very least sophisticated consumer that exists. *Id.* However, we also noted that other circuits view even their "least sophisticated consumer" with an element of reasonableness. *Id.* In formulating the "unsophisticated consumer" standard, our cases have sought to protect consumers who were not sophisticated, while at the same time, like our sister circuits, allowing a reasonableness inquiry to ensure that debt collectors were not liable for "unrealistic or peculiar interpretations" of collection letters. *Id.*

explored by testimony and devices such as consumer surveys." *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999).[4] However, as a matter of law, we shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter. *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000).

We believe that our court's treatment of claims brought under § 1692g will be helpful in our analysis of claims brought under §§ 1692e and 1692f. In several cases, we have focused on the requirements of a claim under 15 U.S.C. § 1692g, which sets forth mandatory information that a debt collector must provide in a written form to a debtor. If the required information is not communicated to the debtor, or if it is provided in a manner that is "confusing" to the consumer, § 1692g has been violated.[5] A letter will not be

---

[4] We recognize that other circuits have held that the question of how a least sophisticated debtor would interpret a letter is a "question of law." *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (stating that the question of whether a letter would violate § 1692g and "confuse a least sophisticated debtor" is a question of law) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996)).

[5] We have noted that, while § 1692g "does not say in so many words that the disclosures required by it must be made in a nonconfusing manner," the statute does create an "implied duty to avoid confusing the unsophisticated consumer." *Bartlett v. Heibel*, 128 F.3d 497, 500 (7th Cir. 1997). Therefore, a debt collector can violate § 1692g by contradicting the required information or by "overshadowing" it. *Id.*; *see also Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (stating that a letter can

(continued...)

considered to be a violation of § 1692g, however, unless "a significant fraction of the population would be . . . mislead" by the letter. *Durkin*, 406 F.3d at 415. We have held that, when a complaint alleges that a dunning letter is confusing, and thus a violation of § 1692g, the plaintiff has stated a recognizable legal claim; no more is necessary to survive a Rule 12(b)(6) motion. *See Marshall-Mosby,* 205 F.3d at 326-27 ("[A] FDCPA complaint survives a motion to dismiss under Rule 12(b)(6) simply by alleging that a dunning letter was confusing."); *Walker*, 200 F.3d at 503; *Johnson*, 169 F.3d at 1059. Because confusion is a fact-based question, dismissal is typically not available under 12(b)(6), which is appropriate only when there is no set of facts consistent with the pleadings under which the plaintiff could obtain relief. *See Johnson*, 169 F.3d at 1059-60.

We have cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because "district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects." *Walker*, 200 F.3d at 501-03 (stating that, even if the lawyers and judge involved thought a letter was not confusing, it would be "possible to imagine facts" that still would support a conclusion that the letter was confusing, such as survey results suggesting that four out of five high school dropouts found it to be confusing). "[W]hat seems pellucid to a judge, a legally sophisticated reader, may be opaque" to the unsophisticated consumer. *Johnson*, 169 F.3d at 1060.

---

[5] (...continued)
be confusing when it overshadows the necessary language, when it contradicts the required language or when it fails to explain an apparent contradiction).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is "false, deceptive, or misleading" (in violation of § 1692e) or "unfair or unconscionable" (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter. *See Fields v. Wilber Law Firm*, 383 F.3d 562, 565-66 (7th Cir. 2004) (applying the "unsophisticated consumer" standard to claims brought under §§ 1692e and 1692f); *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995, 997 (7th Cir. 2003) (same); *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (applying the "unsophisticated consumer" standard to § 1692e claim); *Gammon*, 27 F.3d at 1257-58 (same). Indeed, neither *Marshall-Mosby*, *Johnson*, nor *Walker* stated that their analysis was limited to only the § 1692g context.

CPI contends there are no facts imaginable that would support Ms. McMillan's claim; however, Ms. McMillan submits that she should be allowed to conduct a consumer survey to determine if consumers would find the letter she received to be false or misleading, in violation of § 1692e, or unfair or unconscionable, in violation of § 1692f.[6]

---

[6] CPI contends that, because Ms. McMillan did not argue to the district court that she wished to conduct a consumer survey, she should be foreclosed from now claiming that she wishes to conduct one to prove her claim. *See* Appellee's Br. at 17. While new arguments usually are not allowed on appeal, we have stated that a plaintiff "may . . . be able to revive a claim dismissed

(continued...)

We have stated on several occasions that a "carefully designed and conducted consumer survey" is <u>one way</u> to create a triable issue of fact as to how an unsophisticated consumer would interpret a collection letter. *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004); *see also, e.g., Walker*, 200 F.3d at 501 ("How a particular notice affects its audience is a question . . . [that] may be explored by testimony and devices such as consumer surveys."); *Johnson*, 169 F.3d at 1060; *Durkin*, 406 F.3d at 415. CPI relies on *Taylor v. Calvary Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), for the proposition that the court can determine from the face of a letter "that not even a significant fraction of the population would be misled by it." 365 F.3d at 574 (internal quotations omitted). However, that statement was made in *Taylor* in the course of evaluating a district court's grant of summary judgment; the court was therefore determining whether the record in that case contained a genuine issue of triable fact, a different and significantly more demanding standard than the Rule 12(b)(6) standard applicable in this case. *Id.* at 575. Therefore, *Taylor* is not apposite to Ms.

---

[6] (...continued)
under Rule 12(b)(6) by asserting on appeal new facts and theories consistent with the original complaint." *Hart v. Transp. Mgmt. of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005); *see also Stevens v. Umstead*, 131 F.3d 697, 705 (7th Cir. 1997). We have stated that such a rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). In this case, at its core, Ms. McMillan is claiming that an "unsophisticated consumer" could find the language used in the letter to be unfair and also could interpret the language as an attempt to disgrace the recipient. The favorable result of a consumer survey would be a fact consistent with her allegations in her complaint.

McMillan's present claim that the motion to dismiss was improperly granted.[7]

In sum, the requisite inquiries under § 1692e and § 1692f are necessarily fact-bound. Whether characterized as issues of fact or issues of mixed fact and law, district courts must act with great restraint when asked to rule in this context on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Undoubtedly, there will be occasions when a district court will be required to hold that no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that will violate the statutory provision. In most instances, however, a proper application of the rule will require that the plaintiff be given an opportunity to demonstrate that his allegations are supported by a factual basis responsive to the statutory standard.

---

[7] *Taylor v. Calvary Investment, L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004), was an appeal that consolidated two closely-related cases under the FDCPA. The second case discussed in *Taylor* involved an FDCPA complaint that was dismissed on the pleadings. In that case, the plaintiff stated at oral argument that the only evidence he planned to present was his affidavit stating that the collection letter was confusing. *Id.* at 576. The court stated that the single affidavit would be an "unavailing" form of proof. *Id.* In this case, however, Ms. McMillan stated that she intended to conduct a consumer survey, whose results could conceivably show that a number of consumers would find the letter she received to be false, misleading, unfair or unconscionable. *Cf. Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061-62 (7th Cir. 2000) (holding that a plaintiff's self-serving deposition testimony was not enough for her FDCPA claim to survive summary judgment, but that a consumer survey may have been sufficient).

With the applicable standard now before us, we must examine the record in light of the requirements of the statute and determine whether it is "possible to imagine evidence" that would support the allegations of the complaint and establish violations of § 1692e and § 1692f. *See Walker*, 200 F.3d at 503. If it is possible that Ms. McMillan might be able to produce such evidence, we shall have to conclude that the district court's action was, at best, premature. *See id*.

**A. FDCPA Section 1692e**

Section 1692e states that a debt collector cannot use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute also enumerates a non-exhaustive list of specific practices that are per se "false or misleading."[8] *Id.* One action that is specifically barred under this section is "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." *Id*. § 1692e(7).

**1.**

Ms. McMillan submits that CPI's letter questioning her honesty was false or misleading, in violation of the general

---

[8] In addition to the specific prohibitions found in §§ 1692e and 1692f, the legislative history states that the FDCPA "prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

prohibition found in § 1692e, because the non-payment of a debt does not mean necessarily that the debtor is "dishonest." R.1 at 3. She specifically claims that the language stating that "YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH," that the "creditor believed you to be honest when credit was extended," and that CPI "would like to give you this final opportunity to prove your honesty and good intentions" is false or misleading. *See* R.1 at 3 (emphasis omitted). Ms. McMillan contends there are many reasons why a check might be dishonored that does not involve a lack of honesty, including mathematical error, bank error, or the unexpected delay in the clearing of funds to cover the check. *See* Appellant's Br. at 18. Further, she argues that the record does not contain any evidence that she actually wrote a check that did not clear or that she did not cure the defect. *See id.* at 17 n.2.

Ms. McMillan's complaint may be read as implying that she had written a check that did not clear, although on appeal she argues that the record contains no evidence of whether or not she wrote the check or whether or not it was honored. *See* R.1 at 3 (stating that CPI's statements are "intended to disgrace [her] *because she did not pay the debt at issue*" (emphasis added)). Nevertheless, we agree with Ms. McMillan that on the face of the complaint, there is no evidence in the record as to why her check did not clear, or that CPI had any prior communications asking for payment that Ms. McMillan ignored. Therefore, the language stating that she committed the "injustice of permitting the account to become past due" and then "ignor[ed] all request for payment" may be false.[9]

---

[9] CPI stated at oral argument that this letter was not the first
(continued...)

CPI submits, however, that the statements at issue are "true statements that a person is either dishonest or honest, and that creditors, when extending credit, believe, in good faith, that consumers are honest." Appellee's Br. at 9. CPI is correct in its assertion that the letter, read literally, does not state that Ms. McMillan is dishonest, but rather that she is "either honest or dishonest." Although this statement may be literally true, in some cases "the literal truth may convey a misleading impression" that violates § 1692e. *Gammon*, 27 F.3d at 1258 (Easterbrook, J., concurring); *see also Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996).

Many individuals who write a dishonored check are not necessarily dishonest; there are a variety of reasons that a check may be dishonored that do not necessarily indicate that an individual did not have every intention of paying the underlying debt when the check was issued.[10]

---

[9] (...continued)
communication between Ms. McMillan and CPI. However, this was the first time this court was advised that this was not the first communication between CPI and Ms. McMillan; CPI does not state such a fact in either its motion to dismiss or its appellate brief. Since the record is silent on this issue, it is not clear what communications, if any, transpired between CPI and Ms. McMillan prior to the letter at issue. Drawing all inferences in favor of Ms. McMillan, as we must at this stage of the litigation, we cannot assume that previous communications disclosed to Ms. McMillan in a clear way that she owed a debt to CPI and that she ignored those communications.

[10] In any event, "[a] basic tenet of the [FDCPA] is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve 'the right to be treated in a reasonable and civil manner.'" *Bass v. Stolper, Koritzinsky*,

(continued...)

Indeed, the legislative history of the FDCPA indicates that Congress was aware that not all debtors actually intend to become delinquent on their debts when they take out credit:

> One of the most frequent fallacies concerning debt collection legislation is the contention that the primary beneficiaries are 'deadbeats.' In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697. While CPI's letter to Ms. McMillan literally says "you can either be honest or dishonest," the underlying implication, at least arguably, is that the debtor is being dishonest by allowing the check to be dishonored. By calling into question a debtor's honesty and good intentions simply because a check was dishonored, a collection letter may be making a statement that is false or misleading to the unsophisticated consumer. Therefore, Ms. McMillan has stated a § 1692e claim sufficient to survive a Rule 12(b)(6) motion.

---

[10] (...continued)
*Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) (citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (citing 123 Cong. Rec. 10241 (1977))).

**2.**

Ms. McMillan also contends that the language in the letter stating "YOU ARE EITHER HONEST OR DISHONEST YOU CANNOT BE BOTH," that the "creditor believed you to be honest when credit was extended," and that CPI "would like to give you this final opportunity to prove your honesty and good intentions" violated § 1692e(7), the prohibition on statements intended to disgrace. 15 U.S.C. § 1692e(7) (prohibiting "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer"). CPI replies that, because it did not imply that Ms. McMillan committed a crime or that she committed fraud, its statements did not violate § 1692e(7). In support of its argument, CPI cites the Federal Trade Commission commentary, which only lists a "[f]alse allegation of fraud" or a "[m]isrepresentation of criminal law" as violations of § 1692e(7). *See* Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,106 (Fed. Trade Comm'n Dec. 13, 1988) (hereinafter "FTC Statements").

We begin our analysis with the text of the statute itself, which, as we have stated, "is the most reliable indicator of congressional intent." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324-25 (7th Cir. 1997); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997) ("[C]onstruing the FDCPA in accordance with its plain language may best honor its drafters' intent."). The statutory language of § 1692e(7) states that a debt collector cannot make "[t]he false representation or implication that the consumer committed any crime *or other conduct in order to disgrace the consumer*." (emphasis added). We believe that this language makes clear that Congress intended to

proscribe conduct beyond falsely implying that a debtor
committed a crime. When the statutory term "disgrace" is
given its normal meaning, it is clear that Congress intended
that the statute also proscribe conduct that shames or
humiliates a debtor. Calling into question another's honesty,
and implying that the individual has dishonest intentions
arguably rises to the level of language that could shame or
humiliate the reader of the letter.[11]

Therefore, we decline to give § 1692e(7) the restrictive
meaning advocated by CPI. When the term "disgrace" is
given its natural meaning, we believe that Ms. McMillan
may be able to establish a factual basis that would permit
her relief under § 1692e(7). Ms. McMillan therefore has
stated a claim under § 1692e(7), and it is possible that the
facts will demonstrate that a significant fraction of the
population would find the language in the letter to be
disgraceful.

---

[11] Extrinsic sources are of little interpretative assistance on this
point. The legislative history does not mention the phrase "in
order to disgrace the consumer." *See* S. Rep. No. 95-382, at 8. The
Federal Trade Commission commentary is also equally unavail-
ing; as CPI points out, it only lists a "[f]alse allegation of fraud"
or a "[m]isrepresentation of criminal law" as violations of
§ 1692e(7). Statements of General Policy or Interpretation Staff
Commentary On the Fair Debt Collection Practices Act, 53 Fed.
Reg. 50,097, 50,106 (Fed. Trade Comm'n Dec. 13, 1988). Notably,
the FTC commentary does not state that these are the exclusive
means by which a debt collector can violate § 1692e(7), nor does
it even address the language in the statute regarding disgrace.

**B. FDCPA Section 1692f**

Ms. McMillan also alleges that the letter is unfair or unconscionable in violation of § 1692f. Section 1692f, like § 1692e, states a general prohibition on using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The provision then lists eight specific violations "without limiting the general application" of the statute.[12] *Id.* CPI submits that its

---

[12] The text of 15 U.S.C. § 1692f states:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the forgoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the

(continued...)

conduct was not "unfair or unconscionable" because it did not utilize any of the eight specifically barred practices in § 1692f, nor did it "do anything remotely similar to any of these practices." Appellee's Br. at 10.[13] However, as the

---

[12] (...continued)

> communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
>> (A) there is no present right to possession of the property claims as collateral through an enforceable security interest;
>>
>> (B) there is no present intention to take possession of the property;
>>
>> (C) the property is exempt by law from such dispossession or disablement.
>
> (7) Communicating with a consumer regarding a debt by postcard.
>
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

[13] CPI also urges us to follow the test that it claims that the Supreme Court of the United States has set out for establishing unfair conduct: (1) whether the practice offends public policy; (2) whether the conduct is oppressive, and (3) whether it causes substantial injury to consumers. Appellee's Br. at 10-11 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5 (1972)). However, *Sperry* was interpreting a portion of the Federal Trade Commission Act, 15 U.S.C. § 45, not the FDCPA.

(continued...)

statute states explicitly, the listing of eight specific violations was not intended to limit the applicability of the general prohibition of "unfair or unconscionable" behavior. *See* 15 U.S.C. § 1692f.

To determine whether or not any set of facts might allow relief to be granted, we first must determine the meaning of "unfair or unconscionable" in the context of the FDCPA. The legislative history is not helpful in this task. It simply states that "[a] debt collector is prohibited from using any unfair or unconscionable means to collect debts." S. Rep. 95-382, at 8. The FTC Commentary states that "[a] debt collector's act in collecting a debt may be 'unfair' if it causes injury to the consumer that is (1) substantial, (2) not outweighed by countervailing benefits to consumers or competition, and (3) not reasonably avoidable by the consumer." "FTC Commentary," 53 Fed. Reg. 50,097, 50,106 (Fed. Trade Comm'n Dec. 13, 1988). The FTC Commentary does not provide any definition for the term "unconscionable."

The FTC Commentary is not binding on the courts because it is not a formal regulation and did not undergo full agency consideration. *See Bass,* 111 F.3d at 1327 n.8.[14]

---

[13] (...continued)
*See Sperry*, 405 U.S. at 234. Moreover, *Sperry* did not adopt such a test, but rather was merely quoting, in a footnote, the test that the FTC uses to determine whether a practice that is neither in violation of the antitrust laws nor deceptive could still be unfair. *See id*. at 244 n.5. Because the *Sperry* Court is interpreting a different statute, and because it does not set forth such a test, *Sperry* is of marginal, if of any, assistance in our present inquiry.

[14] *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000);
(continued...)

Indeed, the Commentary itself states that it "is not a formal trade regulation rule or advisory opinion of the Commission, and thus is not binding on the Commission or the public." "FTC Commentary," 53 Fed. Reg. 50,097, 50,101 (Fed. Trade Comm'n Dec. 13, 1988). A federal court therefore can decline to adopt the FTC position. *See Scott v. Jones*, 964 F.2d 314, 317 (4th Cir. 1992).

In the accomplishment of our present task, we do not find the FTC commentary particularly helpful. Nor do we find it persuasive as a comprehensive statement of the meaning of the statutory terms before us. The test articulated by the FTC appears to preclude recovery for some of the very conduct explicitly prohibited as "unfair or unconscionable" by the statute. For example, § 1692f(8) explicitly bars the use of symbols on a debt collection letter's envelope, although it is difficult to say that such activity necessarily would create a substantial injury to the debtor. Similarly, the Eighth Circuit has found a violation of § 1692f(1) when a collection letter overstated interest calculations by less than two dollars, which hardly could be characterized as a substantial injury. *See Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000). Because we find that the FTC Commentary fails to address *comprehensively* the statutory scheme and therefore "falls outside the range of reasonable interpretation of the [FDCPA]'s express language," we cannot give it conclusive weight. *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995); *see also Thomas v. Law Firm of Simpson & Cyback*, 392 F.3d 914, 920

---

[14] (...continued)

*Goswami v. American Collections Enter., Inc.*, 377 F.3d 488, 493 n.1 (5th Cir. 2004) (stating that the court "consider[s] the FTC staff commentary . . . only insofar as it is persuasive"); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 n.2 (11th Cir. 1998).

(7th Cir. 2004) (en banc). Indeed, other federal courts, when determining if conduct is unfair or unconscionable, have not used the FTC's test; indeed, they do not mention it.[15]

We believe that plain language of the general provision, when read in the context of the entire text of the statutory provision, including the specific examples of unfair and unconscionable conduct, might afford a basis for relief for Ms. McMillan. At this early stage of the litigation, we cannot say that Ms. McMillan will not be able to produce evidence to show that an unsophisticated consumer would view the collection letter, calling into question Ms. McMillan's honesty and good intentions, to be unfair or unconscionable. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (holding that a plaintiff stated a claim under § 1692e and § 1692f sufficient to survive a Rule 12(b)(6) motion when the letter at issue "could conceivably mislead an unsophisticated consumer"). We therefore hold that Ms. McMillan has stated a § 1692f claim sufficient to withstand a Rule 12(b)(6) motion.

---

[15] *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (holding that a letter did not violate § 1692f because it was "relatively innocuous, and not 'unconscionable' in either a legal or lay sense"); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996) (stating that a letter did not violate § 1692f's general prohibition because it did not "manifest[ ] patent unfairness," nor did it "reflect an abuse of Defendants' superior economic position and level of sophistication, the hallmark of unconscionability").

**Conclusion**

While we express no opinion on the ultimate merits of Ms.
McMillan's claim, it is quite possible that she will not be
able to obtain survey results that indicate that unsophisti-
cated consumers would find the letter she received to be
false or misleading, disgraceful, or unfair or unconscionable.
Indeed, we have recognized that, simply because a Rule
12(b)(6) dismissal is inappropriate in an FDCPA claim, it is
not inevitable that "litigation need be prolonged." *Walker*,
200 F.3d at 504. A district court may treat the motion to
dismiss as a motion for summary judgment and require the
plaintiff to come forward with proof. *Id*. However, even if
Ms. McMillan's claims would lack merit in a summary
judgment motion, it does not necessarily mean that she has
not stated a claim upon which relief can be granted. As we
said in *Johnson*, "a claim may fail on the facts, but assessing
factual support for a suit is not the office of Rule 12(b)(6)."
169 F.3d at 1059.

For the reasons set forth in this opinion, the judgment of
the district court is reversed and the case is remanded for
proceedings consistent with this opinion. Ms. McMillan may
recover her costs in this court.

                                      REVERSED and REMANDED

BAUER, *Circuit Judge*.  I respectfully dissent. I believe that
the district court reached the correct conclusion. Since the
majority opinion cites the district court opinion in suf-
ficient detail, I shall simply state that, in my opinion, she got
it right.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*